Santore *v.* Reading Company, Appellant.

58

Argued October 2, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Richard P. Brown, Jr.,* with him *Henry R. Heebner,* and *Morgan, Lewis & Bockius,* for appellant.

*George W. Alexander, Jr.,* for appellees.

OPINION BY DITHRICH, J., November 15, 1951:

Early in the evening of January 19, 1949, plaintiffs were riding in an automobile owned by plaintiff Santore, and driven by plaintiff Attilio Marino, when it collided with a locomotive owned and operated by defendant, Reading Company. An action in trespass was brought against defendant-company in which Santore claimed damages for injuries to his person and his property, while plaintiffs Attilio and Joseph Marino each claimed damages for personal injuries arising out of the accident. At the conclusion of its case defendant presented a point for binding instructions as to each plaintiff, which was refused; the court permitted the issues of defendant's negligence, the driver's contributory negligence, and the existence of a bailment of the automobile by the plaintiff-owner to the plaintiff-driver to be decided by the jury. The jury returned a verdict for defendant as to the driver, Attilio Marino, a verdict in the sum of $2,500 for the owner, Santore, and a verdict for Joseph Marino in the sum of $100.

Defendant filed a motion for judgment n. o. v. as to the plaintiff-owner but had judgment entered on the verdict as to the plaintiff-driver. This appeal followed the court's dismissal of defendant's motion.

The basic question was recently before the Supreme Court in *Beam v. Pittsburgh Railways Co.,* 366 Pa. 360,

362, 77 A. 2d 634, viz.: ". . . whether the owner of an automobile who is seated therein and who has intrusted the operation of his car to a companion may recover damages for injuries sustained by him by reason of the negligence[1] of a third person if the driver of his own car has also by his negligence contributed to the happening of the accident,—in other words, whether the contributory negligence of the driver is imputable, under such circumstances, to the occupant-owner of the car."

However, before taking up that question, we must first consider a procedural question raised in this appeal. Defendant's point for binding instructions was phrased in general terms as follows: "Under all the evidence the verdict as to each plaintiff must be for the defendant." It has repeatedly been held that a court cannot enter judgment n. o. v. except in a case where, at the close of the trial, binding instructions would have been proper. *Maiden v. Philadelphia Transportation Co.,* 163 Pa. Superior Ct. 189, 60 A. 2d 409; *Stierheim v. Bechtold,* 158 Pa. Superior Ct. 107, 43 A. 2d 916; 6 Standard Pa. Prac., ch. 27, p. 404, note 17. It would have been improper for the judge at the close of the trial of this case to affirm the broad point submitted by defendant if the driver's contributory negligence was properly a jury question. Therefore, though the jury's verdict may be construed as establishing the contributory negligence of the driver, and though that negligence should as a matter of law, under the circumstances, be imputed to the owner of the car, judgment n. o. v. cannot be entered here for defendant as against the owner unless the driver's negligence was likewise clear as a matter of law.

---

[1] Defendant's negligence is assumed for present purposes, it having been found as a fact by the jury and not questioned in this appeal.

However, it is argued that whether the driver was contributorily negligent as a matter of law is not before this Court for review inasmuch as defendant entered judgment on the verdict and failed to file a motion for judgment n. o. v. as to him, thereby admitting, it is contended, that the question of his contributory negligence was properly for jury determination. We do not accede to that argument for two reasons. First, to move for judgment n. o. v. as to the owner-plaintiff based on a point for binding instructions of the type submitted by defendant in this case is to raise the question of the driver-plaintiff's contributory negligence as a matter of law by necessary implication. Second, by the Act of Legislature which governs the power of courts to enter judgment n. o. v., we are required on review of motions for such judgment to "review the action of the court below, and enter such judgment as shall be warranted by the evidence taken in that court." Act of April 22, 1905, P. L. 286, §1, as amended by Act of April 9, 1925, P. L. 221, §1, 12 PS §681. Cf. *McCann v. Philadelphia Fairfax Corporation,* 344 Pa. 636, 26 A. 2d 540.

Under the trial evidence the contributory negligence of the driver-plaintiff was so manifestly clear as to require its declaration as a matter of law. His own testimony discloses that immediately preceding the accident the automobile was traveling east in the right hand lane of the Industrial Highway, a four-lane highway, at a speed of 35 m.p.h. When the automobile was 15 feet from the point where the single track of defendant crosses the Industrial Highway, he first observed defendant's locomotive moving into the crossing but could not avoid the collision. He testified that he traveled the Industrial Highway eight or ten times a year and that he was familiar with the existence and location of this crossing but on the occasion in question failed to stop. The only justification offered for his

failure to do so was his testimony that "it was pitch dark" and "a little misty," and the testimony of others that "It was dark—it looked like it was going to rain," that it was "slightly . . . hard to see" and that "It was pretty dark—a pretty dark night and kind of foggy."

There can be no question that the driver violated the rule requiring the operator of a motor vehicle to stop, look and listen before entering upon a railroad track, a rule which applies to sidings as well as main tracks, the violation of which is more than evidence of questionable negligence; it is negligence per se. *Highton v. Pennsylvania Railroad Co.*, 132 Pa. Superior Ct. 559, 1 A. 2d 568. Nor did the evidence of mist, darkness or fog excuse him. In *Serfas v. Lehigh & New England Railroad Co.*, 270 Pa. 306, 308, 309, 113 A. 370, the Court said: ". . . it is the duty of a chauffeur traveling by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision. For example, it is the chauffeur's duty to keep his car under such control that whenever his headlight has brought a grade crossing into view he can stop before reaching it. Such crossing is not invisible by day nor, when an auto is equipped with proper lights, by night; in either case the chauffeur must discover its presence and stop before driving thereon. We have never held darkness an excuse for failure to perform this absolute duty, but the contrary: [citing cases]. . . . Should we hold that the traveler need not stop to look and listen because of darkness, then we should logically extend the same immunity in case of a fog or snow storm, or when the crossing was dimmed by dust or otherwise, even in the daytime. To so hold would suspend the rule when needed most, and practically destroy it."

In *Wink v. Western Maryland Railway Co.*, 116 Pa. Superior Ct. 374, 176 A. 760, a minor plaintiff drove an automobile into the cars of a freight train passing over a road crossing. He testified that because of a little fog he was unable to see the freight until within 20 or 30 feet of it. After verdict for plaintiffs, a motion for judgment n. o. v. was sustained, and affirmed on appeal, the minor plaintiff being held negligent as a matter of law. This Court said (p. 375): "The appellate courts have frequently ruled that, notwithstanding road and weather conditions, it is the duty of an automobile driver to have his car under such control that he may discover a grade crossing or any other obstacle in his immediate path in time to enable him to stop within the range of his lights, or turn the car to avoid danger."

Returning to the question of the imputation of the contributory negligence of the driver to the owner-occupant, we are guided by the principles enunciated by the Supreme Court in *Beam v. Pittsburgh Railways Co.*, supra (pp. 370, 371), the product of a careful review and analysis of the authorities. Among those principles are the following: "(1) The mere presence of the owner in an automobile while it is being driven in a negligent manner by another does not *necessarily* make him liable for an injury caused thereby, or impute to him the driver's negligence. . . . (2) There is a *presumption, in the absence of any evidence to the contrary,* that an owner present in his car has power to control it: . . . (3) The test of the owner's liability is the *right* of control, not whether he exercises it or not: . . . (4) In the absence of evidence to the contrary, the legal relation between the owner seated in his car and the person whom he has permitted to drive it is that of principal and agent or master and servant and therefore he is not only liable for damages caused to a per-

son by the driver's negligence but the driver's contributory negligence is imputable to him so as to bar his right of recovery, if he himself is injured, for damages caused by the negligence of a third person. In other words, if the negligence of the driver is imputable to him as a defendant it is also imputable to him as a plaintiff in the same situation: Rest. Torts, §§485, 486."

Applying the aforesaid principles to the present case, it is manifest that recovery by the plaintiff-owner against the Reading Company is impossible. All that the record discloses is that the driver, Marino, who had to go to Chester to see about a job, received permission to use the owner's two-week-old Cadillac for that purpose. However, the owner went along—for the sole reason that the car had previously been driven but 238 miles and, in his own words, "I didn't want him [Marino] to chase it. . . . I wanted to check him that he didn't go too fast."

Santore's own testimony establishes the fact that he accompanied the driver of his car for the express purpose of controlling its operation, and he cannot be heard to say his words and conduct indicated that the driver was to act entirely on his own responsibility and free of supervision as if the owner were absent. Under the circumstances the question as to whether he surrendered his right of control was not for determination by the jury, as it ordinarily would be, but for the court. "Only if . . . [Santore] had entirely relinquished his right of control as owner and deliberately made himself a 'guest' in his own car would the principle of imputability of the driver's negligence have become inapplicable. But . . . there is no evidence whatever to permit of such a finding." *Beam v. Pittsburgh Railways Co.*, supra (p. 373).

The right to control the operation of the vehicle is the determinative factor in these cases. Where the

owner-occupant has so patently retained the right to control the operation of his automobile driven by another, as here, under the circumstances, the legal relation between owner and driver must be that of principal and agent or master and servant, and it is useless to permit a jury to speculate on the possibility that a bailment of the automobile was intended.

The judgment as to the plaintiff-owner, James J. Santore, is reversed and here entered for the defendant.